WILLIAM J. GEDDES
Nevada Bar No. 6984
KRISTEN R. GEDDES
Nevada Bar No. 9027
THE GEDDES LAW FIRM, P.C.
1575 Delucchi Lane, Suite 206
Reno, Nevada 89502
Phone: (775) 853-9455
Fax: (775) 299-5337
Email: Will@TheGeddesLawFirm.com
Email: Kristen@TheGeddesLawFirm.com

*Attorneys for Plaintiff Tashina Matheson*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TASHINA MATHESON, an individual, | CASE NO: 3:20-cv-00606 |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| CASHMAN EQUIPMENT COMPANY, a domestic corporation, | **JURY DEMAND** |
| Defendant. | |

COMES NOW Plaintiff TASHINA MATHESON, by and through her counsel, William J. Geddes, Esq. and Kristen R. Geddes, Esq. of the law firm THE GEDDES LAW FIRM, P.C. and hereby complains of Defendant CASHMAN EQUIPMENT COMPANY as follows.

**I.**

**STATEMENT OF THE CASE**

This is an employment-discrimination case arising under the Americans with Disabilities Act and its corresponding state law NRS 613.330. Plaintiff Tashina Matheson is disabled from a lower back injury occurring at her job at Cashman Equipment Company. From July 10, 2017 through March 31, 2020, Matheson worked as a warehouse associate for Cashman Equipment Company in Elko, Nevada. On March 30, 2020, Matheson injured her lower back at work while lifting a delivery item. Matheson did not immediately realize that she injured her back at that time. However, later that night or by the next day, March 31, 2020, Matheson realized that she had injured her back. So, on March 31,

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

2020, she went to work and told her "lead" supervisor Nicole Jacobo and General Manager Randy Beck about her workplace injury. Beck told Matheson to go home, but the company's safety/human resources manager countermanded that order and instructed Matheson to see a doctor right away, instead. So, that same morning on March 31, 2020, Matheson, accompanied by the safety/human resources manager, went and saw a medical provider at the A-Plus Urgent Care in Elko, NV. The medical provider there, Dr. Karen Wright, M.D., initially diagnosed Matheson's back injury to be a lower back strain or sprain, and she ordered her to return for follow-up diagnosis and treatment. In the meantime, the medical provider released Matheson to return to work that day, to work modified duty or "light duty" only. The medical provider also issued medical work restrictions for Matheson, including the following ones: avoid bending over entirely; avoid twisting entirely; avoid jumping entirely; avoid climbing ladders entirely; avoid prolong sitting; avoid prolonged standing; no lifting over shoulder greater than 20 lbs.; no pulling or pushing greater than 20 lbs. These medical work restrictions were issued for one week and subsequently re-issued during Matheson's follow-up medical visits. After her medical visit that day, March 31, 2020, Matheson immediately returned to work around lunchtime, seeking to work "light duty," as ordered by her doctor. She explained these things to her supervisor, the Safety/HRM, and Beck, and she provided them with her medical paperwork from the urgent care, setting forth her "light duty" order and other medical restrictions. The employer complied with those medical work restrictions by changing Matheson's job assignment to "light duty" functions for the rest of that workday, March 31, 2020. However, two hours before the end of that same day, Matheson was fired on a pretext for allegedly having engaged in "unsafe behavior" the day before, March 30, 2020, on the theory that she must have engaged in unsafe behavior because she suffered her workplace injury. This lawsuit alleges that Cashman Equipment Company fired Matheson because of her protected trait of having a disability and/or in retaliation for her protected activity of requested an accommodation for her disability, in violation of the ADA and NRS 613.330 and NRS 613.340. Plaintiff seeks monetary, equitable, and injunctive relief.

## II.

### JUISDICTION AND VENUE

1.      The federal claims of this case are maintained pursuant to 28 U.S.C. § 1331 ("[t]he

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). In particular, this case asserts federal discrimination claims, actionable under the Americans with Disabilities Act and the Americans with Disabilities Act Amendment Act (collectively, "ADA"), codified at 42 U.S.C. § 12101 *et seq*. This Court has supplemental jurisdiction over the corresponding state-law discrimination claims (NRS 613.330 and NRS 613.340), pursuant to 28 U.S.C. § 1367(a) ("the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

2.      Venue is proper in the U.S. District Court situated in Reno, Nevada, under Local Rule IA 1-6 and 28 U.S.C. § 1391(b) because this Court is located in the "unofficial Northern Division," embracing the City of Elko, County of Elko, Nevada, and because Defendant CASHMAN EQUIPMENT COMPANY *ex rel.* conducted business in the City of Elko, County of Elko, Nevada where all or a substantial part of the events or omissions giving rise to the claims of the case occurred.

### III.

### PARTIES

3.      At all times relevant herein, Plaintiff TASHINA MATHESON ("MATHESON") was a citizen of the state of Nevada, residing in the County of Elko, Nevada, and she was employed by Defendant CASHMAN EQUIPMENT COMPANY as warehouse associate, working at its business location, situated at 4218 Ruby Vista Drive, Unit 100, in the city of Elko, Nevada in the County of Elko.

4.      Defendant CASHMAN EQUIPMENT COMPANY ("CEC") is a domestic corporation, authorized to do authorized to do business in the state of Nevada and actually doing business as a corporation in the state of Nevada, operating as a Caterpillar equipment dealer in the state of Nevada, providing new and used equipment for sale and rental and operating a parts and service department to the construction, mining, energy, paving, laser site control, power, and truck engine industries. At all times relevant herein, CEC conducted business operations at 4218 Ruby Vista Drive, Unit 100, in the city of Elko, Nevada in the County of Elko. At all times relevant herein, CEC employed more than 15 employees across all its business locations. At all times relevant herein, CEC was the employer of

MATHESON, as alleged herein.

## IV.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

5.     From July 10, 2017 through March 31, 2020, MATHESON was employed by CEC, working as a warehouse associate at CEC's business location situated at 4218 Ruby Vista Drive, Unit 100, in Elko, Nevada.

6.     On March 30, 2020, MATHESON injured her lower back at work ("Workplace Injury") while lifting a delivery item.

7.     MATHESON did not immediately realize that she injured her back at that time.

8.     However, later that night or by the next day, March 31, 2020, MATHESON realized that she had injured her back.

9.     On the following day, March 31, 2020, MATHESON went to work and told her "lead" supervisor Nicole Jacobo ("Jacobo") and her general manager Randy Beck ("Beck") about her Workplace Injury.

10.     Beck told MATHESON to go home, but the company's safety/human resources manager ("Safety/HRM" or "HR Personnel") countermanded that order and instructed MATHESON to see a doctor right away, instead.

11.     On that same morning, March 31, 2020, MATHESON, accompanied by the Safety/HRM, went to the A-Plus Urgent Care in Elko, NV, seeking medical treatment for her Workplace Injury.

12.     The medical provider at A-Plus Urgent Care, Dr. Karen Wright, M.D., initially diagnosed MATHESON'S to be suffering from a lumbar strain, and she ordered MATHESON to return for follow-up visit one week later.

13.     In the meantime, Dr. Wright released MATHESON to return to work that day, to work modified or "light duty" only.

14.     Dr. Wright also issued medical work restrictions for MATHESON, including the following ones: avoid bending over entirely; avoid twisting entirely; avoid jumping entirely; avoid climbing ladders entirely; avoid prolong sitting; avoid prolonged standing; no lifting over shoulder

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

4

greater than 20 lbs.; no pulling or pushing greater than 20 lbs.

15.     These medical work restrictions were issued for one week and subsequently medical work restrictions were issued, re-issued, or modified, during MATHESON's follow-up medical visits with various medical providers, and ultimately her condition was diagnosed her condition to be lumbar strain and lumbar myofascial pain syndrome.

16.     At all times relevant herein, MATHESON's physical impairments ("Physical Impairments") to her lower back, arising from her Workplace Injury, substantially limited one or more of her major life activities, including the activities of working, performing manual tasks and physical labor, bending over, twisting; jumping, climbing ladders, prolonged sitting, prolonged standing, lifting items over her shoulder, pulling and pushing heavy objects.

17.     At all times relevant herein, MATHESON's Physical Impairments were disabilities ("Disabilities"), within the meaning, scope, and protection of the American's With Disabilities Act and its Amendment Act ("ADA") and NRS 613.330.

18.     After MATHESON'S medical visit to the A-Plus Urgent Care that day, March 31, 2020, MATHESON immediately returned to work around lunchtime, and she requested an accommodation of her Disabilities, including to be able to work "light duty," as ordered by her doctor.

19.     At that time, MATHESON explained her doctor-ordered medical work restrictions to her supervisor and HR personnel, and she provided them with her medical paperwork from A-Plus Urgent Care, which set forth her "light duty" and other medical work restrictions regarding her Disabilities, arising from her Workplace Injury,

20.     CEC initially granted MATHESON's request for an accommodation of her Disabilities and complied with her medical work restrictions by changing MATHESON's job assignment to "light duty" functions for the rest of her shift that day, March 31, 2020.

21.     However, about two hours before the end her shift that day, March 31, 2020, MATHESON was fired.

22.     CEC's stated reason for firing MATHESON was she engaged in "unsafe behavior" on the day that she was injured in the Workplace Injury, March 30, 2020, theorizing that she must have engaged in unsafe behavior because she suffered her Workplace Injury.

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

23.     However, in reality, CEC fired MATHESON because of her protected trait of being disabled, within the meaning of the ADA and NRS 613.330 and/or in retaliation for MATHESON's protected activity of requesting an accommodation for Disabilities, in violation of the ADA and NRS 613.330 and/or NRS 613.340.

24.     CEC's stated reason for firing MATHESON was a pretext to mask its unlawful discrimination, prohibited by the ADA and NRS 613.330 and/or NRS 613.340, as alleged herein.

25.     MATHESON timely submitted, or caused to be submitted, a charge of unlawful disability discrimination and retaliation, for both state (NRS 613.330) and federal violations (ADA) with the Equal Employment Opportunity Commission ("EEOC") in EEOC Claim No. 550-2020-01195, as alleged herein.

26.     At all times relevant herein, the Nevada Equal Rights Commission ("NERC"), a commission within the Nevada Department of Employment, Training, and Rehabilitation, was the Fair Employment Practices Agency ("FEPA") which was responsible for enforcing anti-employment discrimination laws in Nevada, similar to the federal anti-employment discrimination laws enforced by EEOC.

27.     At all relevant times herein, the NERC/FEPA and the EEOC had a "work-share agreement," ("WSA") which permitted either the NERC/FEPA or the EEOC to process *both* the state (NRS 613.330) and federal (ADA) claims, depending on where the claim was filed.

28.     Pursuant to the WSA, the EEOC received and processed both the state (NRS 613.330) and federal (ADA) claims, when handling EEOC Claim No. 550-2018-00688, all of which claims are now administratively exhausted.

29.     More than 180 days elapsed since the date the EEOC assumed jurisdiction over MATHESON's charge of unlawful disability discrimination under state and federal law, as charged in EEOC Claim No. 550-2018-00688, and no suit based thereon was filed by the EEOC.

30.     Based on this delay of greater than 180 days, MATHESON lawfully requested a right-to-sue letter from the EEOC.

31.     On July 30, 2020, the EEOC, issued a "right-to-sue letter" for the discrimination claims of this case, as described in EEOC Claim No. 550-2020-01195, pursuant to 42 U.S.C. 12111 *et seq.*,

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

and MATHESON timely filed the instant suit within ninety (90) days of the receipt of that "right-to-sue letter."

### *FEDERAL CLAIMS*

### V.

### FIRST CLAIM FOR RELIEF

### UNLAWFUL DISCRIMINATION BASED ON DISABILITY:

### Failure to Accommodate Disabilities, Disparate Treatment, and Termination of Employment Because of Disabilities

### (Americans With Disabilities Act and Amendment Act - 42 U.S.C. § 12101 *et seq*.)

32. MATHESON incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

33. Defendant CEC violated the ADA and 42 U.S.C. § 12101 *et seq*. and is liable for its culpable conduct and the conduct of its CEC employees and agents, including Beck, Jacobo, Amanda Bentacourt, and CEC's HR Personnel, under the ADA and 42 U.S.C. § 12101 *et seq*. for the reasons set forth in this claim for relief.

34. At all times relevant herein, MATHESON'S Disabilities, described herein, were physical disabilities and related conditions, causing pain, suffering, and physical limitations to her body, including to her spinal column, as described herein, which Disabilities are covered by, and within the meaning of, the ADA codified at 42 U.S.C. § 12102 *et seq*., in that these physical impairments substantially limited one or more of MATHESON'S major life activities, including the activities of working, performing manual tasks and physical labor, bending over, twisting; jumping, climbing ladders, prolonged sitting, prolonged standing, lifting items over her shoulder, pulling and pushing heavy objects, for which Disabilities MATHESON was had received medical evaluation, treatment, and care, and subsequently continued to receive such medical treatment beyond the date of her termination, for more than six (6) months.

35. At all times relevant herein, Defendant CEC, including through its agents and employees, including Beck and CEC's HR personnel:

(A)     was aware of MATHESON'S Disabilities;

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

(B)     was aware that MATHESON had a record of such Disabilities; and

(C)     regarded MATHESON as having physical impairments, including her Disabilities, (which has continued for than six months) and substantially limited one or more of her major life activities, in connection with her Workplace Injury, including the activities of working, performing manual tasks and physical labor, bending over, twisting; jumping, climbing ladders, prolonged sitting, prolonged standing, lifting items over her shoulder, pulling and pushing heavy objects, as described herein.  In this regard, on the afternoon of March 31, 2020, CAC changed her job duties because of her medical work restrictions and Disabilities arising from her Workplace Injury, when CEC put MATHESON on "light duty," and prevented her from engaging in the work she performed prior to her Workplace Injury.  *See e.g., Higgins-Walsh v. Bend Storage & Transfer, Inc.*, No. 6:16-cv-02172-JR, 2018 U.S. Dist. LEXIS 169208, at *18 (D. Or. Apr. 26, 2018) (citing 42 U.S.C. § 12102(3)(A) (emphasis added)).

36.     Notwithstanding MATHESON'S Disabilities, at all relevant times herein, MATHESON could perform the essential functions of her job, with a reasonable accommodation of her Disabilities, including:

(A)     The reasonable accommodation that MATHESON initially requested of Beck and CEC's HR personnel on March 31, 2020, *i.e.*, to work "light duty," as described herein;

(B)     The reasonable accommodation of allowing MATHESON to take medical leave, whether paid or unpaid, to seek further medical treatment for her Disabilities, to allow her to recuperate and/or reach maximum medical improvement of her Disabilities and to return to work to perform the essential functions of her job with or without further reasonable accommodation;

(C)     The reasonable accommodation of making modifications or adjustments to the work environment at CEC, or to the manner or circumstances under which MATHESON's job duties or position are customarily performed, including by job restructuring, modifying MATHESON's work schedule, acquiring or modifying equipment, changing company policies, providing assistants or helpers; and

(D)     and allowing MATHESON to be reassigned to another available position for which she was qualified.

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

8

37.   At all relevant times herein, CEC was required to engage in the interactive process ("Interactive Process"), mandated by the ADA and NRS 613.330, to identify and implement appropriate reasonable accommodations to MATHESON for her Disabilities, including to explore and identify the precise limitations resulting from MATHESON's Disabilities and the potential reasonable accommodations that could overcome those limitations.

38.   CEC's obligation to engage in the Interactive Process, with regard to MATHESON's Disabilities was triggered when:

(A)   On March 31, 2020, MATHESON informed Beck and CEC's HR personnel of her Workplace Injury, prior to obtaining medical treatment that day, as described herein;

(B)   On March 31, 2020, after MATHESON returned from her medical visit and requested of Beck and CEC's HR personnel to be allowed to work "light duty," as described herein; and

(C)   On March 31, 2020, after MATHESON returned from her medical visit, when she provided Beck and CEC's HR personnel her medical paperwork from the A-Plus Urgent care, setting forth her medical restrictions, including the order to return to work under "light duty," which also amounted to MATHESON's medical representative giving notice of MATHEON's Disabilities and the desire for accommodation.

39.   At all relevant times herein, Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, refused to, and intentionally failed to, engage in the mandatory Interactive Process with MATHESON regarding her requests for accommodation of her Disabilities, including when:

(A)   Withdrawing the reasonable accommodation initially provided to MATHESON, *i.e.*, "light duty," so as to terminate her employment on a pretext, as described herein;

(B)   Refusing to consider or provide further accommodation of MATHESON's Disabilities after withdrawing its "light duty" accommodation for MATHESON, so as to fire her on a pretext, as described herein; and

(C)   Terminating MATHESON's employment because of her Disabilities, on a pretext, in lieu of providing her further accommodation under the ADA, and NRS 613.330.

40.     If Defendant CEC had properly engaged in the Interactive Process with MATHESON, as described herein, Defendant CEC and MATHESON could have identified reasonable accommodations, or further reasonable accommodations, for MATHESON's Disabilities, which would have allowed her to remain employed with CEC, as envisioned by the ADA and NRS 613.330.

41.     Defendant CEC's intentional failure to engage in the Interactive Process with MATHESON constituted an Adverse Employer Action, within the meaning of the ADA and NRS 613.330 and NRS 613.340.

42.     At all relevant times herein, Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, intentionally engaged in adverse employment practices against MATHESON because of her Disabilities, including when withdrawing, and failing to implement further, reasonable accommodation of her Disabilities and when terminating MATHESON's employment, amounting to unlawful discrimination against MATHESON, as alleged herein, because of her Disabilities.

43.     At all relevant times herein, Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, intentionally engaged in disparate treatment of MATHESON, as compared to other similarly-situated employees, and such differences in treatment were based on MATHESON'S protected characteristic of her Disabilities, as described herein, including when CEC held MATHESON to a different performance standard, including "workplace safety," and the enforcement of "workplace safety policies," which formed the ostensible basis of the pretext by which CEC terminated MATHESON's employment, as described herein.

44.     Defendant CASHMAN EQUIPMENT COMPANY, including through its CEC agents and employees, including Beck and CEC;'s HR personnel, engaged in such disparate treatment and unlawful discrimination of MATHESON because of MATHESON's disabilities, including, when:

(A)     Failing to accommodate, or to continue accommodating, MATHESON's Disabilities, as described herein;

(B)     Failing to engage in the Interactive Process for MATHESON's Disabilities, as described herein; and

(C)     Forming the pretext and conclusion that MATHESON engaged in an "unsafe

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

act" warranting her termination of employment, as described herein; and

        (D)    Terminating MATHESON's employment, as described herein.

45.    As a result of such intentional, unlawful, and discriminatory conduct against MATHESON by Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, based on and because of MATHESON'S Disabilities, MATHESON has suffered, and continues to suffer, economic losses, including lost wages and benefits, back pay, front pay, physical and emotional harm, including mental anguish, inconvenience, and the loss of enjoyment of life, for which she is entitled to compensatory and equitable damages, in an amount to be proven at trial.

46.    The disparate treatment and unlawful discrimination by Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, was intentional, willful, malicious, and/or engaged in with a reckless indifference to the health, safety, wellbeing, federally-protected rights, and state-law-protected rights of MATHESON—including when Defendants withdrew their "light-duty" accommodation from MATHESON, failed to engage in the Interactive Process or further Interactive Process with MATHESON, fabricated their pretext for terminating MATHESON's employment, and actually terminating MATHESON'S employment—all while CEC, its management, and its HR personnel were well aware of MATHESON's rights under the ADA, NRS 613.313, and NRS 613.340, and while they were well aware of CEC's legal obligations under the ADA, NRS 613.313, and NRS 613.340—warranting an award of punitive damages, to punish Defendant CEC, in an amount determined by a jury at trial, according to law.

47.    As a result of such intentional, unlawful, and discriminatory conduct against MATHESON by Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, based on and because of MATHESON'S Disabilities, MATHESON has had to retain the services of attorneys in this matter, and she, therefore, is entitled to, and seeks reimbursement for, her attorneys' fees and costs, her expert-witness fees, and her court costs, in an amount to be proven at trial.

48.    As a result of such intentional, unlawful, and discriminatory conduct against MATHESON by Defendant CEC, including through its employees and agents, including Beck and

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

CEC's HR personnel, based on and because of MATHESON'S Disabilities, MATHESON is entitled to, and seeks, declaratory relief, in the form of a declaration by this Court, that Defendant violated MATHESON'S rights by engaging in unlawful discrimination, as alleged herein.

49.     As a result of such intentional, unlawful, and discriminatory conduct against MATHESON by Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, based on and because of MATHESON'S Disabilities, MATHESON is entitled to, and seeks, injunctive relief, in the form of an injunction issued by this Court, that compels Defendant CEC to give effect to the rights of MATHESON, and to take other appropriate action, including: the removal of all adverse information from her employee file, relevant to the claims of this case, and, if appropriate and feasible, the reinstatement of MATHESON to her prior employment position or another vacant position with CASHMAN EQUIPMENT COMPANY, for which she qualifies, with full pay and benefits, if never terminated.

## VI.

## SECOND CLAIM FOR RELIEF

## UNLAWFUL DISCRIMINATION BASED ON DISABILITY:

### Violation of the Anti-Retaliation Provisions of the ADA, 42 U.S.C. § 12203 *et seq.*

50.     MATHESON incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

51.     Defendant CEC violated the ADA's anti-retaliation provision and 42 U.S.C. § 12203 *et seq.* and is liable for its culpable conduct and the conduct of its CEC employees and agents, including Beck and CEC's HR Personnel, under the ADA and 42 U.S.C. § 12203 *et seq.* for the reasons set forth in this claim for relief.

52.     At all times relevant herein, MATHESON engaged in conduct amounting to "protected activity" ("Protected Activity") under the anti-retaliation provisions of the ADA, including when MATHESON requested an accommodation of her Disabilities, described herein, including when:

(A)     On March 31, 2020, MATHESON informed Beck and CEC's HR personnel of her Workplace Injury, prior to obtaining medical treatment that day, as described herein;

(B)     On March 31, 2020, after MATHESON returned from her medical visit and

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

requested of Beck and CEC's HR personnel to be allowed to work "light duty," as described herein; and

(C)   On March 31, 2020, after MATHESON returned from her medical visit, when she provided Beck and CEC's HR personnel her medical paperwork from the A-Plus Urgent care, setting forth her medical restrictions, including the order to return to work under "light duty," which also amounted to MATHESON's medical representative giving notice of MATHEON's Disabilities and the desire for accommodation.

53.   At all times relevant herein, CEC, including through its employees and agents, including Beck and CEC's HR personnel, subjected MATHESON to the following adverse employer actions ("Adverse Employer Actions"):

(A)   Failing to accommodate, or to continue accommodating, MATHESON's Disabilities, as described herein;

(B)   Failing to engage in the Interactive Process for MATHESON's Disabilities, as described herein; and

(C)   Forming the pretext and conclusion that MATHESON engaged in an "unsafe act" warranting her termination of employment, as described herein; and

(D)   Terminating MATHESON's employment, as described herein.

54.   At all times relevant herein, such Adverse Employer Actions taken against MATHESON by CEC, including through its employees and agents, including Beck and CEC's HR personnel, would be materially adverse to a reasonable employee, reasonably likely to deter charging parties or others from engaging in protected activity, and such Adverse Employer Actions materially affected the compensation, terms, conditions, or privileges of MATHESON's employment and other rights secured to MATHESON.

55.   There was a causal link between MATHESON's protected activity and these Adverse Employer Actions that MATHESON suffered.

56.   Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, subjected MATHESON to these Adverse Employer Actions, in retaliation for, and because of, her Protected Activity.

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

57.    Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, unlawfully discriminated against MATHESON by retaliation, described herein, and violated the anti-retaliation provisions of the ADA, including as codified at 42 U.S.C. § 12203.

58.    As a result of such intentional, unlawful, retaliatory conduct against MATHESON by Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, based on and because of MATHESON'S Protected Activity, MATHESON has suffered, and continues to suffer, economic losses, including lost wages and benefits, back pay, front pay, physical and emotional harm, including mental anguish, inconvenience, and the loss of enjoyment of life, for which she is entitled to compensatory and equitable damages, in an amount to be proven at trial.

59.    The deliberate, unlawful, retaliatory conduct against MATHESON by Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, based on and because of MATHESON'S Protected Activity, was intentional, willful, malicious, and/or engaged in with a reckless indifference to the health, safety, wellbeing, federally-protected rights, and state-law-protected rights of MATHESON—including when Defendants withdrew their "light-duty" accommodation from MATHESON, failed to engage in the Interactive Process or further Interactive Process with MATHESON, fabricated their pretext for terminating MATHESON's employment, and actually terminating MATHESON'S employment—all while CEC, its management, and its HR personnel were well aware of MATHESON's rights under the ADA, NRS 613.313, and NRS 613.340, and while they were well aware of CEC's legal obligations under the ADA, NRS 613.313, and NRS 613.340—warranting an award of punitive damages, to punish Defendant CEC, in an amount determined by a jury at trial, according to law.

60.    As a result of such intentional, unlawful, and retaliatory conduct against MATHESON by Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, based on and because of MATHESON'S Protected Activity, MATHESON has had to retain the services of attorneys in this matter, and she, therefore, is entitled to, and seeks reimbursement for, her attorneys' fees and costs, her expert-witness fees, and her court costs, in an amount to be proven at trial.

61.    As a result of such intentional, unlawful, and retaliatory conduct against MATHESON

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

14

by Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, based on and because of MATHESON'S Protected Activity, MATHESON is entitled to, and seeks, declaratory relief, in the form of a declaration by this Court, that Defendant violated MATHESON'S rights by engaging in unlawful retaliation, as alleged herein.

62.     As a result of such intentional, unlawful, and retaliatory conduct against MATHESON by Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, based on and because of MATHESON'S Protected Activity, MATHESON is entitled to, and seeks, injunctive relief, in the form of an injunction issued by this Court, that compels Defendant CEC to give effect to the rights of MATHESON, and to take other appropriate action, including: the removal of all adverse information from her employee file, relevant to the claims of this case, and, if appropriate and feasible, the reinstatement of MATHESON to her prior employment position or another vacant position with CASHMAN EQUIPMENT COMPANY, for which she qualifies, with full pay and benefits, if never terminated.

### *STATE CLAIMS*

### VII.

### THIRD CLAIM FOR RELIEF

### VIOLATION OF NEVADA'S ANTI-DISCRIMINATION STATUTE (NRS 613.330) BASED ON DISABILITY

### Failure to Accommodate Disabilities, Disparate Treatment, and Termination of Employment Because of Disabilities

63.     MATHESON incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

64.     Defendant CEC violated the NRS 613.330 and is liable for its culpable conduct and the conduct of its CEC employees and agents, including Beck and CEC's HR Personnel, under NRS 613.330 for the reasons set forth in this claim for relief.

65.     Under Nevada's anti-discrimination statute, codified at NRS 613.330, it is an unlawful employment practice for an employer to discriminate against any of its employees on the basis of the employee's disability.

66.     MATHESON incorporates by reference all prior allegations of this *Complaint*, as though

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

15

fully set forth herein.

67.    At all times relevant herein, MATHESON'S Disabilities, described herein, were physical disabilities and related conditions, causing pain, suffering, and physical limitations to her body, including to her spinal column, as described herein, which Disabilities are covered by, and within the meaning of, the NRS 613.310 and NRS 613.330., in that these physical impairments substantially limited one or more of MATHESON'S major life activities, including the activities of working, performing manual tasks and physical labor, bending over, twisting; jumping, climbing ladders, prolonged sitting, prolonged standing, lifting items over her shoulder, pulling and pushing heavy objects, for which Disabilities MATHESON was had received medical evaluation, treatment, and care, and subsequently continued to receive such medical treatment beyond the date of her termination, for more than six (6) months.

68.    At all times relevant herein, Defendant CEC, including through its agents and employees, including Beck and CEC's HR personnel:

> (A)    was aware of MATHESON'S Disabilities;
>
> (B)    was aware that MATHESON had a record of such Disabilities; and
>
> (C)    regarded MATHESON as having physical impairments, including her Disabilities, (which last more than six months) and substantially limited one or more of her major life activities, in connection with her Workplace Injury, including the activities of working, performing manual tasks and physical labor, bending over, twisting; jumping, climbing ladders, prolonged sitting, prolonged standing, lifting items over her shoulder, pulling and pushing heavy objects, as described herein.  In this regard, on the afternoon of March 31, 2020, CAC changed her job duties because of her medical work restrictions and Disabilities arising from her Workplace Injury, when CEC put MATHESON on "light duty," and prevented her from engaging in the work she performed prior to her Workplace Injury.  *See e.g., Higgins-Walsh v. Bend Storage & Transfer, Inc.*, No. 6:16-cv-02172-JR, 2018 U.S. Dist. LEXIS 169208, at *18 (D. Or. Apr. 26, 2018) (citing 42 U.S.C. § 12102(3)(A) (emphasis added)).

69.    Notwithstanding MATHESON'S Disabilities, at all relevant times herein, MATHESON could perform the essential functions of her job, with a reasonable accommodation of her Disabilities,

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

including:

(A)     The reasonable accommodation that MATHESON initially requested of Beck and CEC's HR personnel on March 31, 2020, *i.e.*, to work "light duty," as described herein;

(B)     The reasonable accommodation of allowing MATHESON to take medical leave, whether paid or unpaid, to seek further medical treatment for her Disabilities, to allow her to recuperate and/or reach maximum medical improvement of her Disabilities and to return to work to perform the essential functions of her job with or without further reasonable accommodation;

(C)     The reasonable accommodation of making modifications or adjustments to the work environment at CEC, or to the manner or circumstances under which MATHESON's job duties or position are customarily performed, including by job restructuring, modifying MATHESON's work schedule, acquiring or modifying equipment, changing company policies, providing assistants or helpers; and

(D)     and allowing MATHESON to be reassigned to another available position for which she was qualified.

70.     At all relevant times herein, CEC was required to engage in the interactive process ("Interactive Process"), mandated by the ADA and NRS 613.330, to identify and implement appropriate reasonable accommodations to MATHESON for her Disabilities, including to explore and identify the precise limitations resulting from MATHESON's Disabilities and the potential reasonable accommodations that could overcome those limitations.

71.     CEC's obligation to engage in the Interactive Process, with regard to MATHESON's Disabilities was triggered when:

(A)     On March 31, 2020, MATHESON informed Beck and CEC's HR personnel of her Workplace Injury, prior to obtaining medical treatment that day, as described herein;

(B)     On March 31, 2020, after MATHESON returned from her medical visit and requested of Beck and CEC's HR personnel to be allowed to work "light duty," as described herein; and

(C)     On March 31, 2020, after MATHESON returned from her medical visit, when she provided Beck and CEC's HR personnel her medical paperwork from the A-Plus Urgent care,

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

17

setting forth her medical restrictions, including the order to return to work under "light duty," which also amounted to MATHESON's medical representative giving notice of MATHEON's Disabilities and the desire for accommodation.

72.    At all relevant times herein, Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, refused to, and intentionally failed to, engage in the mandatory Interactive Process with MATHESON regarding her requests for accommodation of her Disabilities, including when:

(A)    Withdrawing the reasonable accommodation initially provided to MATHESON, *i.e.*, "light duty," so as to terminate her employment on a pretext, as described herein;

(B)    Refusing to consider or provide further accommodation of MATHESON's Disabilities after withdrawing its "light duty" accommodation for MATHESON, so as to fire her on a pretext, as described herein; and

(C)    Terminating MATHESON's employment because of her Disabilities, on a pretext, in lieu of providing her further accommodation under the ADA, and NRS 613.330.

73.    If Defendant CEC had properly engaged in the Interactive Process with MATHESON, as described herein, Defendant CEC and MATHESON could have identified reasonable accommodations, or further reasonable accommodations, for MATHESON's Disabilities, which would have allowed her to remain employed with CEC, as envisioned by the ADA and NRS 613.330.

74.    Defendant CEC's intentional failure to engage in the Interactive Process with MATHESON constituted an Adverse Employer Action, within the meaning of the ADA and NRS 613.330 and NRS 613.340.

75.    At all relevant times herein, Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, intentionally engaged in adverse employment practices against MATHESON because of her Disabilities, including when withdrawing, and failing to implement further, reasonable accommodation of her Disabilities and when terminating MATHESON's employment, amounting to unlawful discrimination against MATHESON, as alleged herein, because of her Disabilities.

76.    At all relevant times herein, Defendant CEC, including through its employees and

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

agents, including Beck and CEC's HR personnel, intentionally engaged in disparate treatment of MATHESON, as compared to other similarly-situated employees, and such differences in treatment were based on MATHESON'S protected characteristic of her Disabilities, as described herein, including when CEC held MATHESON to a different performance standard, including "workplace safety," and the enforcement of "workplace safety policies," which formed the ostensible basis of the pretext by which CEC terminated MATHESON's employment, as described herein.

77.   Defendant CASHMAN EQUIPMENT COMPANY, including through its CEC agents and employees, including Beck and CEC;'s HR personnel, engaged in such disparate treatment and unlawful discrimination of MATHESON because of MATHESON's disabilities, including, when:

(A)   Failing to accommodate, or to continue accommodating, MATHESON's Disabilities, as described herein;

(B)   Failing to engage in the Interactive Process for MATHESON's Disabilities, as described herein; and

(C)   Forming the pretext and conclusion that MATHESON engaged in an "unsafe act" warranting her termination of employment, as described herein; and

(D)   Terminating MATHESON's employment, as described herein.

78.   As a result of such intentional, unlawful, and discriminatory conduct against MATHESON by Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, based on and because of MATHESON'S Disabilities, MATHESON has suffered, and continues to suffer, economic losses, including lost wages and benefits, back pay, front pay, physical and emotional harm, including mental anguish, inconvenience, and the loss of enjoyment of life, for which she is entitled to compensatory and equitable damages, in an amount to be proven at trial.

79.   The disparate treatment and unlawful discrimination by Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, was intentional, willful, malicious, and/or engaged in with a reckless indifference to the health, safety, wellbeing, federally-protected rights, and state-law-protected rights of MATHESON—including when Defendants withdrew their "light-duty" accommodation from MATHESON, failed to engage in the Interactive Process or

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

19

further Interactive Process with MATHESON, fabricated their pretext for terminating MATHESON's employment, and actually terminating MATHESON'S employment—all while CEC, its management, and its HR personnel were well aware of MATHESON's rights under the ADA, NRS 613.313, and NRS 613.340, and while they were well aware of CEC's legal obligations under the ADA, NRS 613.313, and NRS 613.340—warranting an award of punitive damages, to punish Defendant CEC, in an amount determined by a jury at trial, according to law.

80.   As a result of such intentional, unlawful, and discriminatory conduct against MATHESON by Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, based on and because of MATHESON'S Disabilities, MATHESON has had to retain the services of attorneys in this matter, and she, therefore, is entitled to, and seeks reimbursement for, her attorneys' fees and costs, her expert-witness fees, and her court costs, in an amount to be proven at trial.

81.   As a result of such intentional, unlawful, and discriminatory conduct against MATHESON by Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, based on and because of MATHESON'S Disabilities, MATHESON is entitled to, and seeks, declaratory relief, in the form of a declaration by this Court, that Defendant violated MATHESON'S rights by engaging in unlawful discrimination, as alleged herein.

82.   As a result of such intentional, unlawful, and discriminatory conduct against MATHESON by Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, based on and because of MATHESON'S Disabilities, MATHESON is entitled to, and seeks, injunctive relief, in the form of an injunction issued by this Court, that compels Defendant CEC to give effect to the rights of MATHESON, and to take other appropriate action, including: the removal of all adverse information from her employee file, relevant to the claims of this case, and, if appropriate and feasible, the reinstatement of MATHESON to her prior employment position or another vacant position with CASHMAN EQUIPMENT COMPANY, for which she qualifies, with full pay and benefits, if never terminated.

/ / /

/ / /

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

## VIII.

### FOURTH CLAIM FOR RELIEF

### UNLAWFUL DISCRIMINATION BASED ON DISABILITY:

#### Violation of the NRS 613.340 Disability Retaliation

83.     MATHESON incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

84.     Defendant CEC violated NRS 613.340 and is liable for its culpable conduct and the conduct of its CEC employees and agents, including Beck and CEC's HR Personnel, under NRS 613.340 for the reasons set forth in this claim for relief.

85.     At all times relevant herein, MATHESON engaged in conduct amounting to Protected Activity under the anti-retaliation provisions of the NRS 613.340, including when MATHESON requested an accommodation of her Disabilities, described herein, including when:

(A)     On March 31, 2020, MATHESON informed Beck and CEC's HR personnel of her Workplace Injury, prior to obtaining medical treatment that day, as described herein;

(B)     On March 31, 2020, after MATHESON returned from her medical visit and requested of Beck and CEC's HR personnel to be allowed to work "light duty," as described herein; and

(C)     On March 31, 2020, after MATHESON returned from her medical visit, when she provided Beck and CEC's HR personnel her medical paperwork from the A-Plus Urgent care, setting forth her medical restrictions, including the order to return to work under "light duty," which also amounted to MATHESON's medical representative giving notice of MATHEON's Disabilities and the desire for accommodation.

86.     At all times relevant herein, CEC, including through its employees and agents, including Beck and CEC's HR personnel, subjected MATHESON to the following Adverse Employer Actions:

(A)     Failing to accommodate, or to continue accommodating, MATHESON's Disabilities, as described herein;

(B)     Failing to engage in the Interactive Process for MATHESON's Disabilities, as

described herein; and

(C)    Forming the pretext and conclusion that MATHESON engaged in an "unsafe act" warranting her termination of employment, as described herein; and

(D)    Terminating MATHESON's employment, as described herein.

87.    At all times relevant herein, such Adverse Employer Actions taken against MATHESON by CEC, including through its employees and agents, including Beck and CEC's HR personnel, would be materially adverse to a reasonable employee, reasonably likely to deter charging parties or others from engaging in protected activity, and such Adverse Employer Actions materially affected the compensation, terms, conditions, or privileges of MATHESON's employment and other rights secured to MATHESON.

88.    There was a causal link between MATHESON's protected activity and these Adverse Employer Actions that MATHESON suffered.

89.    Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, subjected MATHESON to these Adverse Employer Actions, in retaliation for, and because of, her Protected Activity.

90.    Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, unlawfully discriminated against MATHESON by retaliation, described herein, and violated NRS 613.340.

91.    As a result of such intentional, unlawful, retaliatory conduct against MATHESON by Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, based on and because of MATHESON'S Protected Activity, MATHESON has suffered, and continues to suffer, economic losses, including lost wages and benefits, back pay, front pay, physical and emotional harm, including mental anguish, inconvenience, and the loss of enjoyment of life, for which she is entitled to compensatory and equitable damages, in an amount to be proven at trial.

92.    The deliberate, unlawful, retaliatory conduct against MATHESON by Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, based on and because of MATHESON'S Protected Activity, was intentional, willful, malicious, and/or engaged in with a reckless indifference to the health, safety, wellbeing, federally-protected rights, and state-law-

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

protected rights of MATHESON—including when Defendants withdrew their "light-duty" accommodation from MATHESON, failed to engage in the Interactive Process or further Interactive Process with MATHESON, fabricated their pretext for terminating MATHESON's employment, and actually terminating MATHESON'S employment—all while CEC, its management, and its HR personnel were well aware of MATHESON's rights under the ADA, NRS 613.313, and NRS 613.340, and while they were well aware of CEC's legal obligations under the ADA, NRS 613.313, and NRS 613.340—warranting an award of punitive damages, to punish Defendant CEC, in an amount determined by a jury at trial, according to law.

93.    As a result of such intentional, unlawful, and retaliatory conduct against MATHESON by Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, based on and because of MATHESON'S Protected Activity, MATHESON has had to retain the services of attorneys in this matter, and she, therefore, is entitled to, and seeks reimbursement for, her attorneys' fees and costs, her expert-witness fees, and her court costs, in an amount to be proven at trial.

94.    As a result of such intentional, unlawful, and retaliatory conduct against MATHESON by Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, based on and because of MATHESON'S Protected Activity, MATHESON is entitled to, and seeks, declaratory relief, in the form of a declaration by this Court, that Defendant violated MATHESON'S rights by engaging in unlawful retaliation, as alleged herein.

95.    As a result of such intentional, unlawful, and retaliatory conduct against MATHESON by Defendant CEC, including through its employees and agents, including Beck and CEC's HR personnel, based on and because of MATHESON'S Protected Activity, MATHESON is entitled to, and seeks, injunctive relief, in the form of an injunction issued by this Court, that compels Defendant CEC to give effect to the rights of MATHESON, and to take other appropriate action, including: the removal of all adverse information from her employee file, relevant to the claims of this case, and, if appropriate and feasible, the reinstatement of MATHESON to her prior employment position or another vacant position with CASHMAN EQUIPMENT COMPANY, for which she qualifies, with full pay and benefits, if never terminated.

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

## IX

## PRAYER FOR RELIEF

WHEREFORE, MATHESON prays for judgment against Defendant CEC, as follows:

1.   For equitable relief, including back pay and front pay, to the fullest recoverable extent, under the ADA, NRS 613.330, and NRS 613.340, separately, in an amount to be proven at trial;

2.   For general, compensatory damages on all claims, to the fullest recoverable extent, under the ADA, NRS 613.330, and NRS 613.340, including for non-pecuniary, compensatory damages for emotional pain, suffering, inconvenience, mental anguish, anger, loss of enjoyment of life, and other nonpecuniary losses, separately, in an amount to be proven at trial;

3.   For special, compensatory damages on all claims, for pecuniary losses and damages to the fullest recoverable extent, under the ADA, NRS 613.330, and NRS 613.340, separately, in an amount to be proven at trial;

4.   For past and future compensatory damages, including incidental and consequential losses, incurred by reason of Defendant's acts, omissions, carelessness, negligence, deliberate indifference, and other culpable conduct described herein, in an amount to be proven at trial, to the fullest recoverable extent, under the ADA, NRS 613.330, and NRS 613.340, separately, in an amount to be proven at trial;

5.   For exemplary and punitive damages, as allowed by law;

6.   For costs of the suit incurred herein, as allowed by law;

7.   For attorneys' fees, costs, and prejudgment interest, as allowed by law;

8.   For experts' fees, costs as allowed by law, in an amount in an amount to be determined at trial or a hearing on the same;

9.   For Declaratory relief, equitably determined by the Court at trial. Pursuant to 28 U.S.C. § 2201, Federal Rule of Civil Procedure 57, 42 U.S.C. §§ 2000e-5, NRS 30.070, NRS 30.100, and NRS 613.330, and NRS 613,340, and the Court's inherent equitable powers, MATHESON seeks, and is entitled to have, declaratory relief awarded in her favor, to

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

declare her rights and the obligations of Defendant CEC, which matters are now in controversy or dispute, where such declaratory relief is necessary and proper to the termination of the disputes raised herein, including as specifically prayed for below, including declaratory relief whereby the Court issues a declaration that Defendant CEC unlawfully discriminated against MATHESON in violation of the ADA, NRS 613.330, and NRS 613.340, and otherwise violated MATHESON'S rights under federal law and state law, as alleged herein, and regarding the rights and obligations of the parties, relating to MATHESON'S employment and re-employment;

10. Based on the foregoing, MATHESON has suffered an irreparable injury, and the remedies available at law, such as monetary damages, are inadequate to compensate for that injury. This inadequacy is, in part, based on the facts that MATHESON is not currently employed by CEC and should be reinstated, if feasible, including to another vacant position at CEC, for which she is qualified, and the inadequacies of remedies available at law, such as monetary damages, are further based on the fact that CEC is currently maintaining false and disparaging information about MATHESON's work performance and tenure at CEC, which will be discovered by third parties, including prospective employers of MATHESON, which will interfere with her ability to obtain employment, including re-employment at CEC. As such MATHESON is entitled to injunctive relief, including an injunction compelling Defendants:

(A) To remove false, adverse information contained in her personnel files relating to the claims of this case;

(B) To provide only a "neutral" job reference concerning MATHESON's tenure at CEC, to all inquiring prospective employers; and

(C) To reinstate MATHESON's employment at CEC or to another available position for which she qualifies at CEC, if feasible and appropriate, with full pay and benefits, as if never terminated.

Considering the balance of hardships between Plaintiff and Defendants, a remedy in equity is warranted, and the public interest would not be disserved by issuance of such injunctive relief.

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

1  MATHESON herein seeks Injunctive relief, equitably determined by the Court at trial;

2       11.    For such other relief as the Court may deem just and proper; and

3       12.    Pursuant to the *Federal Rules of Civil Procedure*, Rule 38, Plaintiff demands a trial by

4       jury on all issues triable by right of a jury.

5

6  Dated this 26th Day of October 2020.     THE GEDDES LAW FIRM, P.C.

7

8

9  WILLIAM J. GEDDES
   Nevada Bar Number 6984

10  The Geddes Law Firm, P.C.
    1575 Delucchi Lane, Suite 206

11  Reno, Nevada 89502
    (775) 853-9455

12  *Attorneys for Plaintiff Tashina Matheson*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455